912 A.2d 259

**PENNSYLVANIA DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellee,**

v.

**Michael J. WEAVER, Appellant.**

Supreme Court of Pennsylvania.

Argued April 6, 2006.

Decided Dec. 28, 2006.

Thomas J. Wagner, Esq., James R. Freeman, Esq., Philadelphia, for Michael J. Weaver.

Timothy P. Wile, Esq., Harold H. Cramer, Esq., Andrew S. Gordon, Esq., Harrisburg, for Bureau of Driver Licensing.

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## *OPINION*

Justice EAKIN.

On May 1, 2004, a police officer with the Phoenixville Police Department arrested appellant for driving under the influence of alcohol (DUI). The arresting officer took appellant to a hospital where he read appellant the warnings on the December 2003 version of the Implied Consent Form, form DL–26,[1] and requested that appellant submit to a blood test. Appellant said nothing; the officer read the form again. Appellant then said he needed time to think it over. The officer read the form to appellant a third time, and appellant refused the test. By letter dated June 15, 2004, the Pennsylvania Department of Transportation, Bureau of Driver Licensing (Penn-DOT) advised appellant his operating privilege was suspended for 18 months for refusing a chemical test, a violation of 75 Pa.C.S. § 1547. Appellant appealed the suspension, and in a September 2, 2004 order, the trial court denied appellant's appeal. On September 30, 2004, appellant filed a motion for supersedeas, which was granted to stay the suspension pending his appeal. Trial Court Order, 9/30/04.

1. The December 2003 version of form DL–26 provided:
 1. Please be advised that you are under arrest for driving under the influence of alcohol or controlled substance in violation of Section 3802 of the Vehicle Code.
 2. I am requesting that you submit to a chemical test of *Blood.*
 3. It is my duty as a police officer to inform you that if you refuse to submit to the chemical test, your operating privilege will be suspended for at least one year. In addition, if you refuse to submit to the chemical test, and you are convicted of, plead to, or adjudicated delinquent with respect to violating Section 3802(a) of the Vehicle Code, because of your refusal, you will be subject to the more severe penalties set forth in Section 3804(c) of the Vehicle Code, which include a minimum of 72 hours in jail and a minimum fine of $1000.00.
 4. It is also my duty as a police officer to inform you that you have no right to speak with an attorney or anyone else before deciding whether to submit to testing and any request to speak with an attorney or anyone else after being provided these warnings or remaining silent when asked to submit to chemical testing will constitute a refusal, resulting in the suspension of your operating privilege and other enhanced criminal sanctions if you are convicted of violating Section 3802(a) of the Vehicle Code.
 Form DL–26 (December 2003), Commonwealth's Exhibit No. C–1.

Appellant filed his appeal of the trial court's September 2, 2004 order to the Commonwealth Court, raising the issue of whether the implied consent warnings on form DL–26 satisfy the requirements of 75 Pa.C.S. § 1547(b)(2). In an unpublished decision, the Commonwealth Court affirmed and reinstated the suspension of appellant's operating privilege, determining form DL–26 satisfied § 1547(b)(2).[2] The court stated it is not a police officer's duty to inform an arrestee of the various sanctions available so as to give the arrestee an opportunity to decide whether it is worth violating that law. *Weaver*, at 2. It further stated form DL–26 informs the arrestee that if he fails to accede to the officer's request for a chemical test, he will be in violation of the law and will be penalized for that violation, and this is sufficient information to decide whether to submit to the test. *Id.*

■ We granted allowance of appeal to determine whether the warnings on form DL–26 satisfy the requirements of § 1547(b)(2)(ii) of the Vehicle Code, 75 Pa.C.S. § 1547. We hold the Commonwealth Court correctly determined form DL–26 satisfies such requirements.

■ "Our scope of review of a decision in a license suspension case is limited to determining whether the trial court's findings of fact are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion in reaching its decision." *Terraciano v. PennDOT*, 562 Pa. 60, 753 A.2d 233, 236 (2000) (citation omitted). However, the question here is one of statutory construction, which is a question of law; "hence, this Court's review is plenary and we owe no deference to the lower courts' legal conclusions." *Siekierda v. PennDOT*, 580 Pa. 259, 860 A.2d 76, 81 (2004) (citation omitted).

Section 1547 of the Vehicle Code provides:

Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more

---

**2.** The Commonwealth Court ordered publication of this decision May 3, 2005. *PennDOT v. Weaver*, 873 A.2d 1 (Pa.Cmwlth.2005).

chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle ... in violation of section ... 3802 (relating to driving under influence of alcohol or controlled substance)....

75 Pa.C.S. § 1547(a)(1). Section 1547(b) of the Vehicle Code sets forth requirements that must be met before PennDOT can suspend a person's operating privilege for refusing a chemical test:

(b) Suspension for refusal.—

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person....

\* \* \*

(2) It shall be the duty of the police officer to inform the person that:

(i) The person's operating privilege will be suspended upon refusal to submit to chemical testing; and

(ii) Upon conviction, plea or adjudication of delinquency for violating section 3802(a), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

*Id.,* § 1547(b)(1), (2).[3]

Appellant argues PennDOT failed to meet its burden of proving the arresting officer complied with the requirements of § 1547(b)(2)(ii) since the officer failed to enumerate the penalties set forth in § 3804(c). He contends § 1547(b)(2)(ii)

3. Section 1547(b)(2)(ii) has been amended since appellant was arrested; it now provides: "if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties)." P.L. 1369, No. 177, § 2, Effective November 29, 2004.

clearly and unambiguously requires the arresting officer to enumerate the penalties applicable for second, third, and subsequent offenses as set forth in § 3804(c).[4] He contends the legislature's inclusion of the language "subject to the penalties provided in section 3804(c)" in subparagraph (ii) was a way of directing police to inform DUI arrestees of each of the penalties in § 3804(c) when requesting that a person submit to a chemical test. "The legislature simply cited the statute as a shorthand way of describing the duty of the police rather than restate all of the penalties a second time in the same legislation." Appellant's Brief, at 9.

The prior version of § 1547(b)(2) provided: "It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing. . . ." 75 Pa.C.S. § 1547(b)(2). It required the police to tell the arrestee of the consequences of refusing a chemical test so the arrestee could make a knowing and conscious choice. Appellant's Brief, at 13 (citing *Penn-*

4. At the time of appellant's arrest, § 3804(c) provided:
 An individual who violates section 3802(a)(1) and refused testing of blood or breath or an individual who violates section 3802(c) or (d) shall be sentenced as follows:
 (1) For a first offense, to:
 (i) undergo imprisonment of not less than 72 consecutive hours nor more than six months;
 (ii) pay a fine of not less than $1,000 nor more than $5,000;
 (iii) attend an alcohol highway safety school approved by the department; and
 (iv) comply with all drug and alcohol treatment requirements imposed under sections 3814 and 3815.
 (2) For a second offense, to:
 (i) undergo imprisonment of not less than 90 days nor more than five years;
 (ii) pay a fine of not less than $1,500;
 (iii) attend an alcohol highway safety school approved by the department; and
 (iv) comply with all drug and alcohol treatment requirements imposed under sections 3814 and 3815.
 (3) For a third or subsequent offense, to:
 (i) undergo imprisonment of not less than one year nor more than five years;
 (ii) pay a fine of not less than $2,500; and
 (iii) comply with all drug and alcohol treatment requirements imposed under sections 3814 and 3815.
 75 Pa.C.S. § 3804(c).

*DOT v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989)). Appellant states "[a] failure to provide the required warning meant there was no refusal upon which to base a suspension." *Id.*, at 12. Appellant contends that under the version of § 1547 in effect at the time of his arrest, the legislature required the officer to inform the arrestee regarding suspension of operating privilege and all possible criminal consequences of a refusal before an arrestee can be penalized for refusing a chemical test. Appellant claims since the officer did not comply with the legislature's mandate under subparagraph (ii), "there can be no refusal and no basis for a suspension...." *Id.*, at 13.

Appellant further argues that even if § 1547(b)(2)(ii) is ambiguous, the rules of statutory construction require the warnings to include the enhanced penalties for second, third, and subsequent offenses. He asserts form DL–26's reference to "section 3804(c)" is "meaningless to anyone but vehicle code experts ... [and] it would be unreasonable and absurd to suggest that the legislature would require police to impart information to arrestees that would have no meaning to them." *Id.*, at 15. He argues the inclusion of this clause lessens the impact of the warnings and fosters refusals since the clause minimizes the potential mandatory minimums facing repeat offenders. Appellant contends, "[r]epeat offenders would be much more likely to submit to the test if informed that the refusal and conviction would result in 90 days in prison and a $1,500 fine if it was a second offense and one year in jail and a $2,500 fine if it was a third or subsequent offense." *Id.*, at 16.

PennDOT argues the warnings on form DL–26 were sufficient to comply with the duty imposed on police officers by § 1547(b)(2). *See Weaver.* PennDOT argues these warnings satisfy § 1547(b)(2)(ii) since they inform the driver that upon conviction, plea, or adjudication of delinquency for violating § 3802(a), the driver will be subject to the more severe penalties set forth in § 3804(c). Appellee's Brief, at 8. It notes the Commonwealth Court has consistently denied similar challenges to the sufficiency of the form DL–26 warnings. Appellee's Brief, at 20 (citing *Alexander v. PennDOT*, 885

A.2d 651 (Pa.Cmwlth.2005); *Witmer v. PennDOT,* 880 A.2d 716 (Pa.Cmwlth.2005); *Garner v. PennDOT,* 879 A.2d 327 (Pa.Cmwlth.2005)).

PennDOT contends the version of § 1547(b)(2) effective at the time of appellant's arrest is not complicated or ambiguous, and requires a police officer to provide only two specific pieces of information: first, that the arrestee's operating privilege will be suspended upon refusal to submit to chemical testing, and second, that if he refuses testing, and is later convicted of a violation of 75 Pa.C.S. § 3802(a), he will be subject to the penalties in § 3804(c). PennDOT argues the plain language of § 1547(b)(2) requires the officer inform the arrestee of only these two points.

PennDOT argues the second sentence of paragraph three of form DL–26 satisfies the duty imposed by subparagraph (ii) since that sentence provides all the information mandated by the legislature, as well as accurate information not required by the statute. It asserts subparagraph (ii) does not require an officer to specifically enumerate the various penalties set forth in § 3804(c). PennDOT further argues "[t]he information [in the third paragraph of form DL–26] regarding the minimum penalties imposed under Section 3804(c) is not required by Section 1547(b)(2)(ii) and, while accurate, it is extraneous and gratuitous and should not affect the validity of the warning itself." Appellee's Brief, at 19. PennDOT urges this Court not to find the warnings insufficient based on its "gratuitous" inclusion of information that is not required by § 1547(b)(2)(ii). *Id.,* at 22.

 The object of statutory interpretation is to determine the intent of the General Assembly. 1 Pa.C.S. § 1921(a). "When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent." *Hannaberry HVAC v. Workers' Compensation Appeal Board (Snyder, Jr.),* 575 Pa.66, 834 A.2d 524, 531 (2003) (citing *Pennsylvania Financial Responsibility Assigned Claims Plan v. English,* 541 Pa. 424, 664 A.2d 84, 87

(1995)). If the words of the statute are not explicit, the General Assembly's intent may be ascertained by considering:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c). Moreover, in ascertaining the General Assembly's intent, we presume the General Assembly did not intend a result that is absurd, impossible of execution, or unreasonable. *Id.*, § 1922(1).

The essence of appellant's argument is that § 1547(b)(2)(ii) requires warnings beyond those provided in form DL–26. We disagree. Subparagraph (ii) commands police officers to inform an arrestee that "(ii) upon conviction, plea or adjudication of delinquency for violating section 3802(a), the person will be subject to penalties provided in section 3804(c) (relating to penalties)." 75 Pa.C.S. § 1547(b)(2)(ii). The words of this statute are clear and free from all ambiguity; thus, we will glean the legislative intent from those words. *English*, at 87 ("Where the words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words."). The plain language requires only that the officer inform the arrestee that if he is convicted of DUI, refusal will result in additional penalties; it does not require the officer to enumerate all of the possible penalties, as appellant claims.

We reject appellant's claim that form DL–26's reference to § 3804(c) is meaningless to anyone save Vehicle Code experts and that it is unreasonable and absurd that the legislature would require police to give an arrestee meaningless information. Form DL–26 gives an arrestee an easily understandable

warning that if he refuses a chemical test and is convicted of DUI, he will be subject to severe penalties because of his refusal. That which the legislature required the police to provide an arrestee is clear, and does not include the impractical complexity of explaining each of the three sections and eleven sub-subsections set forth in § 3804(c).

■ We also reject appellant's claim that form DL–26 did not satisfy § 1547(b)(2)(ii)'s requirements. The form stated that if an arrestee refuses to submit to a chemical test, and he is convicted of DUI, because of his refusal, he will be subject to the penalties set forth in § 3804(c), *"which include a minimum of 72 hours in jail and a minimum fine of $1000.00."* Form DL–26 (December 2003) (emphasis added). The clause included in form DL–26 is an accurate statement of the minimum penalties set forth in § 3804(c). This clause does not state the minimum penalties of 72 hours imprisonment and $1000 fine are exhaustive of the penalties set forth in § 3804(c); rather, it states the penalties set forth in § 3804(c) *include* these minimum penalties, which suggests other penalties are available. While some arrestees may be more willing to submit to a chemical test if provided with the most severe penalties to which they may be subject, this information is not necessary under the statute. As the Commonwealth Court succinctly noted, "It is not the duty of the police to explain the various sanctions available under a given law to an arrestee to give that individual an opportunity to decide whether it is worth it to violate that law." *Weaver,* at 2. This inclusion of accurate information concerning the minimum penalties, beyond what the legislature required, does not affect the validity of form DL–26 warnings. Indeed, it informs the arrestee that the penalties are concrete, and not inconsequential.

Appellant also challenges the Commonwealth Court's filing of unpublished decisions. He asserts unpublished decisions harm our justice system by allowing courts to put inadequate thought and emphasis into the legal reasoning behind decisions, allowing result-driven decisions, and not benefiting the bench and bar with well-reasoned precedential decisions. Ap-

pellant urges this Court to nullify the internal operating procedures that permit use of *per curiam* memorandum decisions, thereby requiring the Commonwealth Court to publish all decisions. Appellant's Brief, at 17–19. Appellant asserts this case "clearly illustrates the folly of allowing non-precedential opinions." *Id.*, at 18.

Appellant, however, fails to acknowledge the Commonwealth Court ordered publication of this decision. Moreover, Commonwealth Court IOP 412 sets forth clear and well-reasoned criteria for determining whether a decision should be reported. *See* 210 Pa.Code § 67.53. Suggesting that decisions not published beyond the parties are somehow inadequately considered by the appellate court is near scurrilous. There is no reason for this Court to disturb this practical and salient procedure.

For the reasons provided, we affirm the Commonwealth Court.

Order affirmed.

Chief Justice CAPPY, Justice CASTILLE, Justice NEWMAN and Justice SAYLOR join the opinion.

Justice BAER files a dissenting opinion in which Justice BALDWIN joins.

Justice BAER, dissenting.

Today, the Majority holds that the legislature's directive requiring a police officer to inform one under arrest for driving under the influence of the consequences of failure to consent to chemical testing is met through the following text:

It is my duty as a police officer to inform you that if you refuse to submit to the chemical test, your operating privilege will be suspended for at least one year. In addition, if you refuse to submit to the chemical test, and you are convicted of, plead to, or adjudicated delinquent with respect to violating Section 3802(a) of the Vehicle Code, because of your refusal, you will be subject to the more severe penalties set forth in Section 3804(c) of the Vehicle

Code, which include a minimum of 72 hours in jail and a minimum fine of $1000.00.

Form DL–26 (December 2003).

Respectfully, this is meaningless to all except those most involved in the intricacies of the law surrounding driving under the influence. Does anyone really question what the reaction of the United States Supreme Court would have been if in the aftermath of its decision in *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), police would have been so presumptuous as to deliver *Miranda* warnings [1] by informing arrestees: "You have rights as provided at 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694"? Indeed, while many arrestees might well be able to recite the procedural safeguards of constitutional rights required by *Miranda* from the countless times those warnings have been stated in movies and television depictions, few judges or lawyers and virtually no laypeople could discern the penalties provided merely by reference to "Section 3804(c)."

Accordingly, I cannot join my colleagues in holding that the warnings provided by Form DL–26 satisfy the Legislature's directive pursuant to 75 Pa.C.S. § 1547(b)(2) and our requirement in *Commonwealth v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989), that police officers provide an arrestee with information regarding the consequences of refusing chemical testing sufficient to enable that arrestee to make an informed decision of whether to consent to the test.

In *O'Connell*, we insisted that the arrestee be told not only of the civil consequences of refusing testing but also that the constitutional right to an attorney did not apply to the decision to refuse the chemical test.[2] "An arrestee is entitled to this

1. *Miranda* requires the police to inform an arrestee that: "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602.

2. I note that our decision in *O'Connell* predated the provision imposing incarceration for refusal of testing and subsequent conviction of the underlying crime, and thus only contemplated the sufficiency of warn-

information so that his choice to take a [chemical] test can be knowing and conscious and we believe that requiring the police to qualify the extent of the right to counsel is neither onerous nor will it unnecessarily delay the taking of the test." 521 Pa. 253, 555 A.2d 878.

Through Section 1547(b)(2)(ii), the legislature imposed on police officers a duty to inform the arrestee that "[t]he person's operating privileges will be suspended upon refusal to submit to chemical testing" and that "[u]pon conviction, plea or adjudication of delinquency for violating section 3802(a) [DUI], the person will be subject to the penalties provided in section 3804(c) (relating to penalties)." 75 Pa.C.S. § 1547(b)(ii). These penalties range from "imprisonment of not less than 72 consecutive hours" and "a fine of not less than $1,000 nor more than $5,000" for first-time offenders to "imprisonment of not less than one year" and "a fine of not less than $2,500" for a third or subsequent offense. 75 Pa.C.S. § 3804(c). Clearly, the purpose of Section 1547(b)(ii) is to entitle arrestees to the information necessary to assess the dire consequences they face if they fail to consent to chemical testing, to ensure their choice in that regard is knowing and conscious, as we described in *O'Connell.*

My colleagues hold that "[t]he plain language [of Section 1547(b)(2)] requires only that the officer inform the arrestee that if he is convicted of DUI, refusal will result in additional penalties. . . ." Maj. at 196, 912 A.2d at 264. The Majority even suggests that PennDOT's provision of information regarding the minimum penalties of Section 3804(c) is, in fact, not required to fulfill an officer's informational duty pursuant to Section 1547(b)(2). Maj. at 197, 912 A.2d at 265 ("This inclusion of accurate information concerning the minimum penalties, *beyond what the legislature required,* does not affect the validity of form DL–26 warnings." (emphasis added)). I cannot conclude that the Legislature intended that the mere

ings for purposes of the civil collateral consequence of license suspension. I do not speak to whether the same analysis would apply following the addition of penalties involving imprisonment as that issue has not been fully briefed or argued before this Court.

citation to a section number, as the Commonwealth suggests, or reference to "additional penalties," as the Majority opines, would provide the information necessary to allow arrestees to make a knowing choice. The section number is meaningless to most arrestees and the inclusion of merely the minimum sentence as provided in Form DL–26 does not provide information necessary for a knowing decision, and, given the severe consequences for repeat offenders, may well be misleading. *See O'Connell,* 555 A.2d at 877 ("The law has always required that the police must tell the arrestee of the consequences of a refusal to take the test so that he can make a knowing and conscious choice.").

I do not contend that an officer has a duty to recite every penalty provided in Section 3804(c). Instead, I believe the import of the penalties could be conveyed sufficiently by the addition of information regarding the maximum penalty.[3] The additional information will not only provide the arrestee with the ability to make a knowing choice, but also will forward the purpose of the implied consent rule. The greater warning will likely entice more arrestees to submit to the test to avoid the greater penalty for refusing. More arrestees submitting to the test will garner better evidence for the Commonwealth and the courts in determining the proper punishment for those found in violation of Pennsylvania's laws.

Accordingly, I would reverse the decision of the Commonwealth Court and hold that the warnings provided by Form DL–26 do not meet the requirements of 75 Pa.C.S. § 1547(b)(2).

Justice BALDWIN joins this opinion.

---

**3.** For example, rather than informing the arrestee that if he refuses and is convicted, he "will be subject to the more severe penalties set forth in Section 3804(c) of the Vehicle Code, which include a minimum of 72 hours in jail and a minimum fine of $1,000," the officer could provide a fuller warning by adding "and, if you have been convicted of DUI in the past, you may be subject to imprisonment of not less than one year and a fine of not less than $2,500."