[J-11-2019][M.O. - Baer, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 41 MAP 2018 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court at No. 654 MDA 2016 dated |
| | : | 11/8/17, reconsideration denied |
| v. | : | 1/18/18, reversing the order of the |
| | : | Clinton County Court of Common Pleas, |
| | : | Criminal Division, at No. CP-18-CR- |
| JEFFERY CHARLES MAGUIRE, | : | 396-2015, dated 3/22/2016 |
| | : | |
| Appellant | : | ARGUED:  May 15, 2019 |

## CONCURRING OPINION

**CHIEF JUSTICE SAYLOR**                          **DECIDED:  August 22, 2019**

I join parts I, II, and IV of the lead opinion, and respectfully concur in the result as to Part III.

I agree with the lead opinion that the applicable standard is that set forth in *Burger v. New York*, 482 U.S. 691, 107 S. Ct. 2636 (1987), and summarized in *Commonwealth v. Petroll*, 558 Pa. 565, 738 A.2d 993 (1999).  I also agree that Appellant cannot prevail on his challenge to the legality of the inspection of his truck. However, I am not fully aligned with the lead Justices' analysis.

As the lead Justices note, Appellant argues the inspection failed to satisfy the second prong of the *Burger/Petroll* standard, which requires that the warrantless inspection be necessary to further the overall regulatory scheme.  *See Burger*, 482 U.S. at 702, 107 S. Ct. at 2644.  In particular, Appellant observes that the search was

conducted on a private lane between the public road and the landfill, and that the troopers required that drivers open their door rather than roll down their window, and he argues that neither circumstance was necessary to ensure vehicle safety.  *See* Brief for Appellant at 21-24; *see also* Lead Opinion, *slip op.* at 16.[1]  The lead Justices respond by asserting, essentially, that this is irrelevant because, under the second prong of the *Burger/Petroll* standard, only the authorizing statute need pass constitutional scrutiny.  *See id.*  I would note, however, that all three prongs of the *Burger* standard, on their face, only pertain to the authorizing statute, as only the statute was at issue in that case.  The same was true in *Donovan v. Dewey*, 452 U.S. 594, 101 S. Ct. 2534 (1981) (rejecting a Fourth Amendment challenge to warrantless searches under the Federal Mine Safety and Health Act of 1977), on which *Burger* heavily relied.

The Fourth Amendment protects against unreasonable searches and seizures, *see* U.S. CONST. amend. IV, and not merely legislation which authorizes unreasonable searches and seizures.  It therefore seems unsatisfactory, to my mind, to dismiss as irrelevant a defendant's claim that the location and scope of the warrantless searches actually conducted pursuant to an authorizing statute failed to advance the stated governmental interest sufficiently to comport with *Burger/Petroll*.  Rather, I believe the factors Appellant presently identifies should be viewed as part of the overall

---

[1] Appellant also complains that Trooper Beaver had him exit his truck.  He overlooks that this occurred after the trooper developed a suspicion, based on an odor of alcohol he perceived during the administrative inspection, that Appellant might have been driving while intoxicated.

In this sense, Appellant was no differently situated from a potentially intoxicated driver who is subjected to a valid traffic stop based on an independent violation of the Vehicle Code.  In any event, a valid administrative warrantless search which uncovers evidence of criminality does not violate the Fourth Amendment.  *See Petroll*, 558 Pa. at 584, 738 A.2d at 1004.

warrantless-search regime – which the Commonwealth itself portrays as subsuming the training and certification of the officers on the scene. *See* Brief for Commonwealth at 21. As such, I believe that such factors, if they exist in relation to the search actually conducted, should be tested against the *Burger/Petroll* requirements. Hence, I respectfully disagree with the federal appellate court's suggestion to the contrary in *United States v. Maldonado*, 356 F.3d 130, 136 (1st Cir. 2004), on which the lead Justices rely. *Cf. Doe v. City of San Diego*, 198 F. Supp. 3d 1153, 1163 (S.D. Cal. 2016) (acknowledging the validity of an as-applied challenge to a warrantless search of a regulated industry, where the authorizing statute was required to meet the *Burger* test and the challenger argued that the search exceeded the scope of such authorization).[2]

With that said, I am unconvinced by Appellant's contention that the searches conducted at the checkpoint in this case were unnecessary to further the overarching regulatory scheme. It is not unreasonable for officers conducting a safety inspection of a dump truck to have the driver open the door rather than merely roll down the window. Although documents can be handed to an officer through an open window, the truck's cab may be situated high above the ground, and moreover, the statute authorizes an inspection of both the vehicle and its equipment, *see supra* note 2, which can potentially include items visible to an inspector through an open driver's-side door. Separately, the placement of the checkpoint between the road and the entrance to the landfill was

---

[2] The authorizing statute in the present case is cast in general terms. It indicates that a state trooper or other qualified officer who is "engaged in a systematic vehicle inspection program may inspect any vehicle, driver, documents, equipment and load to determine whether they meet standards established in department regulations." 75 Pa.C.S. §4704(a)(2). This contrasts with the mine-safety legislation at issue in *Donovan*, which the Supreme Court upheld after emphasizing that its detailed specifications were carefully tailored to address the underlying legislative concerns and, moreover, gave mine owners constitutionally adequate notice as to the details of the authorized inspections. *See Donovan*, 452 U.S. at 603-04, 101 S. Ct. at 2540-41.

entirely sensible. Therefore, I would conclude that the search of Appellant's vehicle satisfied the second element of the *Burger/Petroll* standard.

Finally, I respectfully differ with the lead Justices' conclusion that Appellant has waived his argument that the officers retained too much discretion in deciding which vehicles to stop. *See* Lead Opinion, *slip op.* at 18. The prohibition on officer discretion is common to both *Burger/Petroll* and the guidelines set forth in *Commonwealth v. Tarbert*, 517 Pa. 277, 535 A.2d 1035 (1987), and *Commonwealth v. Blouse*, 531 Pa. 167, 611 A.2d 1177 (1992). As the lead Justices recite, the fifth criterion of the *Tarbert/Blouse* guidelines mandates that an administratively pre-fixed, objective method be used so officers at the scene do not exercise "unfettered discretion" in selecting such vehicles, Lead Opinion, *slip op.* at 4; likewise, under *Burger/Petroll* the regulatory scheme must "limit the discretion of the inspecting officers." *Id.* at 14.

Appellant has argued throughout this litigation that the troopers at the checkpoint were able to exercise undue discretion in determining which trucks to stop, and that, as a result of this circumstance, the warrantless inspections conducted there were not sufficiently "systematic" to comport with prevailing law. Although he forwarded that contention before the suppression court while discussing the *Tarbert/Blouse* construct rather than the *Burger/Petroll* standard or Section 4704(a)(2), that court had largely concentrated on the *Tarbert/Blouse* framework – and ultimately held that it applied. Having prevailed at the suppression level, Appellant was under no obligation to preserve issues before the Superior Court. *See 500 James Hance Court v. Pa. Prevailing Wage Appeals Bd.*, 613 Pa. 238, 263, 33 A.3d 555, 570 (2011) (citing *Commonwealth v. Reed*, 605 Pa. 431, 438, 990 A.2d 1158, 1163 (2010)).

Before this Court, Appellant repeats the identical substantive claim, although he now couches it as a violation of the "systematic" qualifier set forth in the governing

statute. Further, the majority has determined that, under *Burger/Petroll*, the checkpoint must, in fact, be "systematic" in the precise manner Appellant advocates. Under these circumstances, I would resolve the issue advanced by Appellant on its merits rather than relying on a waiver disposition.

Again, however, I ultimately agree with the lead Justices that Appellant is not entitled to relief. Notably, the suppression court rejected Appellant's claim and found as a fact that that the inspection program was conducted in a systematic fashion in that the decision of which trucks to stop was not left "to the unfettered discretion of the officers at the scene." *Commonwealth v. Maguire*, No. CP-18-CR-000396–2015, *slip op.* at 8. We must affirm that finding if it is supported by the record. *See Commonwealth v. Wallace*, 615 Pa. 395, 407-08, 42 A.3d 1040, 1048 (2012).

Here, the finding that the checkpoint was conducted in a systematic manner is, indeed, supported by the record.[3] In particular, Trooper Beaver testified that there were three officers at the checkpoint, and they took turns inspecting trucks on a rotating basis. They operated under a pre-established routine whereby any vehicle entering the landfill would be stopped and inspected by the next available officer. A given truck would only proceed to the landfill uninspected if, at the time it drove in, all three officers were occupied inspecting other trucks. *See* N.T., Mar. 14, 2016, at 8, 14-15. Thus, there was no evidence at the suppression hearing that the officers were able to exercise any discretion, let alone "unfettered" discretion, in deciding which trucks to inspect.

---

[3] Justice Wecht suggests that this is a question of law and, as such, is not entitled to deference. *See* Concurring and Dissenting Opinion, *slip op.* at 11 n.2. However, it is clearly a mixed question of fact and law, as the "systematic" qualifier is integrally dependent on the court's factual determination as to how much discretion the officers were able to exercise in deciding which trucks to stop. It may thus be contrasted with an issue of statutory construction, which is a pure question of law as recognized in *Siekierda v. PennDOT*, 580 Pa. 259, 860 A.2d 76 (2004), on which Justice Wecht relies.

Appellant's claim to the contrary rests on speculation that it would have been possible for them to subvert this scheme if they wished to do so. *See* Brief for Appellant at 25.

Justice Todd joins this concurring opinion.