**Troy F. REED**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 15, 2011.

Decided Aug. 2, 2011.

---

Terrance M. Edwards, Assistant Counsel, Harrisburg, for appellant.

Harvey B. Reeder, Huntingdon, for appellee.

BEFORE: LEADBETTER, President Judge, and BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge BROBSON.

Appellant Pennsylvania Department of Transportation, Bureau of Driver Licensing (DOT), appeals from an order of the Court of Common Pleas of Huntingdon County (trial court). The trial court sustained a statutory appeal filed by Troy F. Reed (Licensee) from DOT's suspension of Licensee's motor vehicle operating privileges. DOT issued an order suspending Licensee's operating privileges based upon his alleged refusal to submit to blood alcohol testing. We affirm the trial court's order.

By letter dated April 15, 2010, DOT sent a notice of suspension to Licensee, indicating that, based upon his refusal to submit to chemical testing, DOT was suspending his license for eighteen (18) months under section 1547(b)(1)(ii) of the Motor Vehicle Code.[1] Licensee appealed to the trial court, which conducted a hearing on Licensee's appeal.

At the hearing, DOT had the burden to prove the following elements in support of its suspension of Licensee's driving privileges: (1) a police officer arrested Licensee based upon reasonable grounds to believe that Licensee was driving under the influence of alcohol; (2) the officer asked Licensee to submit to chemical testing; (3) Licensee refused to submit to such testing; and (4) the officer provided a warning to Licensee that his failure to submit to testing would result in the suspension of his license. *Banner v. Dep't of Transp., Bureau of Driver Licensing*, 558 Pa. 439, 737 A.2d 1203 (1999).

The pertinent facts, as drawn from the trial court's opinion and the record, are as follows. Officer Streightiff of the Huntingdon Borough Police Department arrested Licensee in the early morning hours of March 20, 2010, after (1) following Licensee when he "peeled out" from the area of a bar parking lot around 2:00 a.m. that morning; (2) observing Licensee failing to observe a stop sign; (3) stopping Licensee and observing Licensee with a moderate odor of alcohol, blood shot eyes, and slurred speech; and (4) observing that Licensee was physically incapable of performing a field sobriety test. (Trial Court Memorandum Opinion, Findings of Fact (F.F.) 4–15.) At the time Officer Streightiff placed Licensee under arrest, Licensee stated, among other things, that "I had one too many beers, but I wouldn't have wrecked or hurt nobody." (F.F. 16.) When Officer Streightiff took Licensee to the J.C. Blair Memorial Hospital for a

---

1. 75 Pa.C.S. § 1547(b)(1)(ii). Section 1547 of the Motor Vehicle Code is commonly referred to as Pennsylvania's Implied Consent Law.

blood alcohol test (F.F. 17), Licensee "became belligerent and verbally abusive." (F.F. 18.) Officer Streightiff attempted twice to read the informed consent warnings contained in what is commonly referred to as Form DL–26, but only read the first two lines of Form DL–26 because Licensee continued to interrupt and "talk over" Officer Streightiff.[2] Officer Streightiff, therefore, never completed reading all of Form DL–26 to Licensee, and the officer recorded Licensee as refusing to consent to blood alcohol testing.

Based upon these facts, the trial court concluded that Licensee did not provide a knowing refusal to submit to testing because he was not informed that his refusal could result in a suspension. While recognizing that this Court created a narrow exception in *Harris v. Department of Transportation, Bureau of Driver Licensing*, 969 A.2d 30 (Pa.Cmwlth.2009), by holding that a Licensee's behavior may sometimes prevent an officer from strictly complying with the requirement to read the complied consent warnings, the trial court concluded that not all unruly behavior on the part of a Licensee will eliminate the requirement that an officer read the complete warnings contained in Form DL–26. Rather, the trial court concluded:

> Our belief is that only conduct that actually makes it physically impossible for an officer to complete a reading of the required warnings is sufficient to warrant the conclusion advanced which is that the officer is excused from doing his statutory duty. In this case we are not

satisfied that [Licensee]'s conduct foreclosed the reading of Form DL–26. If, as he testified, the officer was able to read twice the first two points on the warning form, he could have read all four points regardless of whether or not [Licensee] was listening or behaving himself in a manner that would permit the inference that he understood the consequences of a refusal.

(Trial Court Memorandum Opinion at 9.)

 On appeal,[3] DOT contends that the trial court erred as a matter of law in concluding that Licensee's disruptive behavior did not excuse Officer Streightiff's failure to read the remaining portion of Form DL–26 advising Licensee of the consequences of refusing to submit to blood alcohol testing.

Section 1547(b)(2)(i) of the Motor Vehicle Code imposes upon police officers seeking to obtain chemical testing of a licensee suspected of driving under the influence of alcohol the duty to inform a licensee that "the [licensee]'s operating privileges will be suspended upon refusal to submit to chemical testing." The courts have confirmed this statutory duty to advise a licensee of the consequences of refusing to submit to such testing. *Dep't. of Transp., Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989). As the Supreme Court stated in *O'Connell*, "[a licensee] is entitled to this information so that his choice to take a [chemical] test can be knowing and conscious." *Id.* at 253, 555 A.2d at 878.

---

**2.** The first two lines of Form DL–26 state as follows:

> 1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.
> 2. I am requesting that you submit to a chemical test of blood.

**3.** This Court's standard of review of a trial court's order in a license suspension matter involving a licensee's refusal to submit to chemical testing is limited to considering whether the trial court's findings are supported by competent evidence and whether the court erred as a matter of law or abused its discretion. *Banner*, 558 Pa. at 444, 737 A.2d at 1205.

In considering whether a police officer has satisfied the requirements of this provision, this Court has held that the law requires police officers to read the implied consent warnings contained in Form DL–26. *Yoon v. Dep't of Transp., Bureau of Driver Licensing,* 718 A.2d 386 (Pa. Cmwlth.1998). In *Yoon,* this Court rejected DOT's argument that a police officer adequately complied with the implied consent requirement by providing a licensee with Form DL–26 for the licensee to read instead of reading the warnings to the licensee.

■ In a more recent case, *Hudson v. Department of Transportation, Bureau of Driver Licensing,* 830 A.2d 594 (Pa. Cmwlth.2003), this Court concluded that a licensee's behavior during a police officer's attempt to read the implied consent warnings to a licensee constituted a refusal to submit to testing:

> Here, while at the hospital, Officer Robertson attempted to read Licensee the *O'Connell* warnings three times. In response, Licensee interrupted repeatedly and caused an altercation requiring handcuff restraints. The trial court found Licensee's aggressive behavior constituted a refusal to submit to testing. The court further found Licensee's actions made it impossible for Officer Robertson to wait for Licensee to verbally refuse. These findings are supported by substantial evidence and will not be disturbed on appeal.

*Hudson,* 830 A.2d at 599–600. Implicit in that decision is the conclusion that a licensee's conduct may constitute a refusal to submit to testing even if a police officer has not first complied with Section 1547 of the Motor Vehicle Code and *O'Connell* by reading the implied consent warnings to a licensee from whom an officer seeks to obtain chemical testing.

In *Harris,* this Court addressed another instance where a police officer's failure to complete his reading of Form DL–26 to a licensee was excused (and the licensee was deemed to have knowingly refused to submit to testing) because of the licensee's conduct. Similar to this case, in *Harris,* a police officer read the first two lines of Form DL–26 to the licensee. The Court summarized the pertinent exchange that followed between the officer and licensee:

> Harris stated: "absolutely not, I'm not giving no blood." Trooper MacMurray responded by asking Harris "are you sure you don't want to?" Harris replied "I'm not giving any blood." Trooper MacMurray then advised Harris that he would have to sign the form to indicate his refusal. Trooper MacMurray began reading the first line of paragraph 3 of the DL–26 form.... However, before he read halfway through the sentence, Harris interrupted and stated that he was not going to sign anything he did not read himself. Trooper MacMurray then handed Harris the DL–26 form. After reading the form, Harris asked if it was mandatory for him to take the blood test and Trooper MacMurray informed him that it was not. Finally, Trooper MacMurray asked Harris to sign the form indicating that he refused chemical testing, and Harris did so.

*Harris,* 969 A.2d at 31 (record references omitted). While recognizing the rule set forth in *Yoon* that an officer must actually read the warnings to a licensee, the Court, citing *Hudson,* opined that "if a licensee *prevents* an officer from reading the warnings, and the licensee refuses chemical testing by his conduct, the licensee is still considered to have made an informed refusal." *Id.* at 32 (emphasis added). The Court expressed its ultimate holding as follows.

[W]here an officer attempts to orally inform a licensee of his rights by reading Form DL–26, and the licensee interrupts such reading, specifically by requesting to read the warnings himself, and the officer furnishes a typewritten copy of the warnings, if the licensee thereafter refuses chemical testing, that refusal shall be determined an informed refusal. This holding is further supported when, as here, the licensee signs the warnings after having read them. *Id.* Thus, the Court limited its holding in *Harris* to situations in which a licensee repeatedly interrupts an officer's attempt to read the implied consent warnings, but the licensee requests to read the warnings himself, reads the warnings, and then refuses. In this case, Licensee did not read the warnings himself.

■ Although the facts in *Hudson* similarly involved a licensee who repeatedly interrupted an officer's attempt to read the warnings, the facts in that case distinguish it from this case. In *Hudson,* as noted above, the licensee engaged in an altercation that the trial court concluded *prevented* the police officer from reading the implied consent warning to the licensee. In this case, Licensee did engage in loud, verbally abusive behavior, and "twisted away from the officers." (Trial Court Memorandum Opinion at 6.) Unlike the facts in *Hudson,* however, the trial court determined that Licensee's conduct did not foreclose the officer's reading of the warnings to Licensee. Although Licensee continued to "talk over" Officer Streightiff as he attempted to read the warnings, nothing apparently prevented Officer Streightiff from reading the warnings over Licensee's constant interruptions.

The trial court in this case gave a proper level of significance to the requirement that police officers read the warnings to licensees, and it reached an appropriate balance between that duty and the situations in which this Court has concluded that a police officer is excused from reading the warnings to a licensee. Accordingly, we affirm the trial court's order.[4]

### ORDER

AND NOW, this 2nd day of August, 2011, the order of the Court of Common Pleas of Huntingdon County is AFFIRMED.

---

4. We recognize the difficulty police officers face when dealing with inebriated licensees, but, as the trial court noted, the reading of the implied consent warnings is a prerequisite to a knowing refusal except in extreme and limited circumstances. Although an officer may perceive the reading of the Form DL–26 to be a futile act due to the licensee's conduct, the most prudent course of action for the officer nevertheless would be to read the Form DL–26, despite the conduct, unless the officer is absolutely prevented from doing so. This is particularly prudent given that the courts, in cases such as this one, must consider on a case-by-case basis whether the circumstances facing the officer prevented him from carrying out his legal responsibilities, and the officer does not have the benefit of a bright-line rule for determining whether the circumstances will justify the failure to read the Form DL–26.