# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Paul Gilpatrick,                          :
                 Appellant           :
                                     :
                 v.                      : No. 2506 C.D. 2015
                                     : SUBMITTED: August 5, 2016
Commonwealth of Pennsylvania,             :
Department of Transportation,             :
Bureau of Driver Licensing                :


BEFORE:     HONORABLE ROBERT SIMPSON, **Judge**
                      HONORABLE PATRICIA A. McCULLOUGH, Judge
                      HONORABLE BONNIE BRIGANCE LEADBETTER, **Senior Judge**


**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                              **FILED: October 26, 2016**

       Licensee, Paul Gilpatrick, appeals from an order of the Court of Common Pleas of Chester County denying his statutory appeal and reinstating the one-year suspension of his operating privilege imposed by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department) for refusing to submit to chemical testing pursuant to Section 1547(b)(1)(i) of the Vehicle Code (Code), *as amended*, 75 Pa. C.S. § 1547(b)(1)(i).[1] We affirm.

---

[1] Section 1547(b)(1)(i) provides:

> If any person placed under arrest for a violation of section 3802 [driving under the influence] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person . . . for a period of 12 months.

Upon Licensee's appeal from the Department's notice of suspension, the trial court held a *de novo* hearing at which time Officer Brian McCarthy and Licensee testified. In addition, the Commonwealth submitted into evidence two exhibits: Exhibit C-1, the written communication between Officer McCarthy and Licensee, and Exhibit C-2, the Department's certified record. Certified Record (C.R.), November 12, 2015, Hearing, Exhibits C-1 and C-2.[2] The court accepted the officer's testimony as credible but rejected Licensee's testimony as insubstantial and vague. Accordingly, the relevant facts are as follows.

In November 2013, Officer McCarthy stopped Licensee's vehicle for failure to use a turn signal. *Id*., Notes of Testimony (N.T.) at 4; Reproduced Record (R.R.) at 4a. While pursuing him, the officer also noticed that, after the traffic light turned green, Licensee waited twenty seconds before moving. *Id*. During the traffic stop, the officer identified Licensee from his driver's license and, after he tapped his ear to indicate that he was deaf, the officer primarily used written communication for their interactions. *Id*. at 5; R.R. at 5a. Upon observing that Licensee had watery, glassy and bloodshot eyes, and an odor of alcohol emanating from his person, the officer took out a note pad and asked Licensee how much alcohol he had consumed. In response, Licensee held his index finger slightly above his thumb, which the officer construed as "a little bit." *Id*. While waiting for his partner to arrive, the officer used the note pad to write down the instructions for the field sobriety tests that he planned to administer. Once his partner arrived, the officer gave the instructions to Licensee and permitted him to read them. As Licensee performed each of the three tests (horizontal gaze nystagmus, walk and turn, and one-leg stand), the officer observed clues of

---

[2] Licensee included only Exhibit C-1 in the Reproduced Record.

intoxication. *Id*. at 6-7; R.R. at 6-7a. In addition, the officer noticed the presence of alcohol in Licensee's preliminary breath test. *Id*. at 7; R.R. at 7a. Accordingly, the officer placed handcuffs on Licensee, wrote down that he was under arrest for driving under the influence, and transported him to Phoenixville Hospital for drawing blood for chemical testing.

At the hospital, the officer began to read the DL-26 Chemical Testing Warnings and Report of Refusal form to Licensee. Licensee, however, ignored him and wrote the word "interpreter" on the note pad. *Id*. After unsuccessfully attempting to locate an interpreter, the officer advised Licensee that the officer would read the DL-26 form aloud to him and then permit him to read it. Exhibit C-2, which includes the DL-26 form used during the encounter, depicts the officer's bracket around the four chemical test warnings and his handwritten directive for Licensee to "READ ALL OF THIS."[3] Exhibit C-2 at #2. In that regard, Officer McCarthy testified that he handed the DL-26 form to Licensee and directed him to read all of it. N.T. at 12; R.R. at 12a. Testifying that Licensee looked at the form for approximately thirty seconds to one minute, the officer stated that Licensee read all of it and initially agreed to submit to testing. *Id*. at 10 and 12; R.R. at 10a and 12a. Once they proceeded to the area where the

---

[3] The four warnings, with the fourth quoted verbatim, are as follows:

> 1) You are under arrest for DUI; 2) I am requesting that you submit to a chemical test of blood; 3) If you refuse, you operating privilege will be suspended for at least twelve months; and 4) "You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to chemical testing, you will have refused the test."

Exhibit C-2 at #2.

phlebotomist would have drawn his blood, however, Licensee renewed his request for an interpreter, pointed to his vein, "did no (indicating)" and threw his hands to his side, all of which the officer interpreted as a refusal. *Id*. at 8, 13, and 22; R.R. at 8a, 13a and 22a. Accordingly, the officer took Licensee to the police station for processing and then released him.

In December 2013, the Department notified Licensee that it was imposing a one-year operating privilege suspension as a result of his chemical test refusal. Subsequently, the trial court denied Licensee's statutory appeal and his appeal to this Court followed. Licensee has presented two issues for review: 1) whether the court erred in determining that the Department satisfied its burden of establishing that the officer advised him of the consequences of a refusal to submit to chemical testing and that he thereafter refused the officer's request; and 2) whether the court erred in concluding that Licensee failed to establish that he was incapable of making a knowing and conscious decision to refuse chemical testing.

In order to sustain a suspension of a licensee's operating privilege under Section 1547 of the Code, the Department must establish, in relevant part, that the licensee refused to submit to chemical testing and that he was specifically warned that refusal would result in the suspension of his operating privilege. *Kollar v. Dep't of Transp., Bureau of Driver Licensing*, 7 A.3d 336, 339 (Pa. Cmwlth. 2010). Once the Department meets its burden, the burden shifts to licensee to prove by competent evidence that his refusal was not knowing or conscious or that he was physically unable to take the test. *Id*. The question of whether a licensee's decision to refuse to submit to chemical testing was knowing and conscious is a question of fact for the trial court. *Id*. at 340. If the licensee's inability to render a knowing and conscious refusal is caused, in whole or in part, by the consumption of alcohol, he or she is precluded from meeting that burden as

4

a matter of law. *Lanthier v. Dep't of Transp., Bureau of Driver Licensing*, 22 A.3d 346, 349 n.2 (Pa. Cmwlth. 2011). Finally, the weight of the evidence is exclusively within the purview of the fact finder, who is free to believe all, part, or none of the evidence and to determine the credibility of witnesses. *Reinhart v. Dep't of Transp., Bureau of Driver Licensing*, 954 A.2d 761, 765 (Pa. Cmwlth. 2008).

In determining that the Department met its burden of establishing that Officer McCarthy advised Licensee of the consequences of refusing to submit to chemical testing, the trial court concluded that the officer "testified credibly as to his substantial efforts to work around [Licensee's] hearing impairments and to communicate with [him]." February 26, 2016, Opinion of Trial Court at 2. Assuming for purposes of its decision that Licensee was totally deaf, the court concluded that the officer's act of giving Licensee the warnings to read was sufficient to communicate them, especially given the fact that Licensee never denied his ability to read.[4] *Id*. at 2-3. In that regard, the court concluded that the officer "made every reasonable effort under the circumstances to apprise [Licensee] of the necessary information[,]" *id*. at 3, and accepted as credible the officer's testimony that Licensee read all of it. *Id*. at 2. We conclude that the court did not err in determining that the officer apprised Licensee of the consequences of a refusal. *See Weaver v. Dep't of Transp., Bureau of Driving Licensing*, 873 A.2d 1, 2 (Pa. Cmwlth. 2005), *aff'd*, 912 A.2d 259 (Pa. 2006) (verbiage on DL-26 form

---

[4] Pursuant to the officer's credible testimony, Licensee's ability to read and understand the written word is evident from his ability to read and abide by the officer's written instructions to the field sobriety tests. Specifically, Officer McCarthy testified that he showed Licensee the instructions for each test, Licensee nodded after reading each segment and then the officer administered the test. After Licensee performed each test, the officer crossed out that set of instructions and moved on to the next test. N.T. at 5-6; R.R. at 5-6a.

sufficient to inform a licensee of the implied consent law and to base a decision as to whether to submit to chemical testing); *Harris v. Dep't of Transp., Bureau of Driver Licensing*, 969 A.2d 30, 32 (Pa. Cmwlth. 2009) (*en banc*) (where a licensee interrupted the officer's oral recital of warnings and asked to read them himself, the written copy was sufficient to constitute an informed refusal). We turn now to determining whether the court erred in concluding that Licensee's conduct constituted a refusal.[5]

In rejecting Licensee's version of what transpired at the hospital, the court weighed his testimony and found it to be "insubstantial and vague." February 26, 2016, Opinion of Trial Court at 3. It noted that he "simply did not remember very much about key points of the incident." *Id*. In addition, it took into account Licensee's "overall conduct" in determining that he refused chemical testing. Licensee's conduct included his persistent requests for an interpreter and body language. Regarding those requests, the relevant portion of the fourth implied consent warning provides: "You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings . . . , you will have refused the test." Exhibit C-2 at #2. *See also Martinovic v. Dep't of Transp., Bureau of Driver Licensing*, 881 A.2d 30, 35 (Pa. Cmwlth. 2005) (holding that a police officer has no duty to provide or permit an interpreter) and *Commonwealth v. Robinson*, 834 A.2d 1160, 1164 (Pa. Super. 2003) ("[r]equiring certified interpreters for every driver who may have difficulty understanding a police officer, whether due to a hearing impairment, language barrier or learning disability, is not only not required by the implied consent law, it is simply not

---

[5] Whether a licensee's conduct constitutes a refusal is a question of law. *McKenna v. Dep't of Transp., Bureau of Driver Licensing*, 72 A.3d 294 (Pa. Cmwlth. 2013).

feasible, particularly in the case of DUI investigations where temporal concerns are paramount.")

Moreover, regarding a licensee's body language, a court may consider a licensee's overall conduct in assessing whether he or she refused chemical testing. *Dep't of Transp. v. Renwick*, 669 A.2d 934, 939 (Pa. 1996) (holding that licensee's overall conduct of closing her eyes, turning her head, ignoring the officer's requests, and stating during a fleeting moment that she would assent to the test, demonstrated gamesmanship and a refusal to submit to chemical testing). Accordingly, mindful of the well-established law that anything less than an unqualified, unequivocal assent to testing constitutes a refusal, *id*. at 939, we agree with the court that Licensee refused to submit to chemical testing. Finally, we turn to the interrelated issue of whether Licensee met his burden of establishing that he was unable to make a knowing and conscious refusal.

Licensee argues that his refusal, if any, was not knowing and conscious due to his deafness, the resultant lack of communication with Officer McCarthy, and the officer's refusal to secure the services of an interpreter. In support, Licensee references his allegedly credible testimony and that of Officer McCarthy. In addition, he cites *Department of Transportation, Bureau of Driver Licensing v. Gaertner*, 589 A.2d 272 (Pa. Cmwlth. 1991), holding that a deaf licensee's refusal to submit to chemical testing was not knowing and conscious because, despite the fact that he never requested an interpreter, he needed one in order to make a knowing and conscious refusal.[6]

---

[6] In *Gaertner*, we referenced our standard of review as the most compelling reason for affirming, emphasizing the trial court's decision to credit both the licensee's testimony that he was unaware of what was going on and the testimony of an expert in deaf communications that the licensee did not have a good command of English, could understand only simple words and **(Footnote continued on next page…)**

7

In rejecting Licensee's position, we reiterate that the trial court rejected his testimony as insubstantial and vague. In addition, we emphasize that it is well established that a police officer has neither a duty to ensure that a licensee understands warnings nor a duty to provide or permit an interpreter. *Martinovic*, 881 A.2d at 35. An officer's sole duty is to inform licensees of the implied consent warnings; once he or she has done so, the obligation is satisfied. *Id.* [citing *Dep't of Transp., Bureau of Driver Licensing v. Scott*, 684 A.2d 539 (Pa. 1996)]. Moreover, not only is *Gaertner* distinguishable from the present case, primarily due to the credibility determinations but this Court, in a memorandum opinion involving a Russian speaking licensee with a hearing impairment, observed that "*Gaertner* may have been implicitly overruled" in light of the holding in *Scott* that an officer's duties were limited to advising a licensee of the consequences of a refusal. *Starayeva v. Dep't of Transp., Bureau of Driver Licensing*, (Pa. Cmwlth., No. 2622 C.D. 2010, filed October 24, 2011), slip op. at 11 n.6. We conclude, therefore, that the trial court did not err in determining that Licensee failed to establish that he was incapable of making a knowing and conscious refusal due to the absence of an interpreter.

Accordingly, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

_____
**(continued…)**
sentences, and that he could not have understood the officer's written statement without the services of an interpreter. *Gaertner*, 589 A.2d at 275-76.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Paul Gilpatrick,                          :
                    Appellant            :
                                         :
            v.                           :    No. 2506 C.D. 2015
                                         :
Commonwealth of Pennsylvania,            :
Department of Transportation,            :
Bureau of Driver Licensing               :

# **O R D E R**

AND NOW, this 26ᵗʰ day of October, 2016, the order of the Court of Common Pleas of Chester County is hereby AFFIRMED.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge