# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David J. Celento, : 
                Appellant : 
                 : 
         v. : No. 55 C.D. 2020
                 : Submitted: November 6, 2020
Commonwealth of Pennsylvania, : 
Department of Transportation, : 
Bureau of Driver Licensing : 

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON               FILED: February 16, 2021

David J. Celento (Licensee) appeals from an order of the Huntingdon County Court of Common Pleas (Trial Court) that denied his statutory appeal from the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing's (PennDOT) one-year suspension of his operating privilege under Section 1547(b)(1) of the Vehicle Code, commonly known as the Implied Consent Law.[1] PennDOT suspended his license for refusing chemical testing. Licensee argues that his repeated requests to read the warning prior to testing did not constitute a refusal under the law. He also claims he was confused by the arresting officer who read the warning such that his refusal was not knowing. Discerning no error below, we affirm.

---

[1] Any person placed under arrest for driving under the influence (DUI) is required "to submit to chemical testing . . . [and if that person] refuses to do so . . . [PennDOT] shall suspend the operating privilege of the person . . . for a period of 12 months." 75 Pa. C.S. §1547(b)(1)(i).

# I. Background

On October 28, 2018, Licensee was stopped for a malfunctioning brake light by two officers from the Huntingdon Police Department, Officer Border (Officer) and Corporal Funk (Corporal) (collectively, Police). During the stop, Officer detected the odor of alcohol and asked Licensee if he had been drinking. Licensee admitted he consumed two mixed drinks earlier. Officer then subjected Licensee to field sobriety tests before asking him to take a chemical test for suspicion of driving under the influence (DUI). Licensee opted for a blood test, which is performed in a hospital setting, instead of the portable breath test.

Prior to his transport to the hospital, Licensee asked to take a pill (identified as a nicotine pill), while clutching the pill bottle. When Officer directed Licensee to drop the bottle, he refused, and Police had to pry the bottle from his hand. Licensee remained combative and initially resisted getting into the patrol car.

After arriving at the hospital, Officer began reading the implied consent DL-26A form to Licensee, but realized that he was reading the form for breath testing.[2] *See* Notes of Testimony (N.T.), 8/13/19, at 6; Reproduced Record (R.R.)

---

[2] There are different forms for breath testing (DL-26A form) and blood testing (DL-26B form). *See* PennDOT's Br. at 3, n.4; *see also Garlick v. Dep't of Transp., Bureau of Driver Licensing*, 176 A.3d 1030 (Pa. Cmwlth. 2018) (*en banc*). The DL-26B form states, in relevant part:

> 1. You are under arrest for [DUI] of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code[, 75 Pa. C.S §3802].
> 2. I am requesting that you submit to a chemical test of blood.
> 3. If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of [DUI], you will be suspended for up to 18 months. . . .
> 4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

Original Record, Item No. 15, Ex. 2.

at 6a.[3]   Officer asked the registration nurse at the hospital who obtained the paperwork for the blood test (Nurse) to shred the other form, to which Licensee vigorously objected as "shredding evidence."  N.T. at 7; R.R. at 7a.  Officer then read the correct form, DL-26B related to blood testing (Form), to Licensee.  Licensee requested to read the Form for himself, and after additional requests and opportunities to read the Form, over a 20- to 30-minute period, ultimately, Licensee did not consent to blood testing.

PennDOT notified Licensee of the one-year suspension of his operating privilege based on his refusal to submit to chemical testing after his arrest for DUI.  Licensee appealed the suspension to the Trial Court.

The Trial Court held a hearing on August 13, 2019, at which PennDOT presented Officer and Corporal as witnesses.  Licensee, who was not represented by counsel at the time, presented the testimony of Nurse who observed the exchange between Police and Licensee when they brought Licensee in for the blood test.  Licensee also testified on his own behalf.

Officer confirmed the circumstances of Licensee's DUI arrest and the subsequent events related to chemical testing.  Officer testified that he recited the Implied Consent warnings on the Form to Licensee verbatim.  Officer emphasized that Licensee repeatedly delayed the blood test by requesting to read the Form, and then created additional excuses for not being able to read the Form when Officer gave it to him.  However, Officer conceded that Licensee claimed he had dyslexia and used reading glasses.  But even after Officer retrieved Licensee's reading glasses, Licensee continued to delay and did not consent to testing though he had the Form in

---

[3] Though Licensee did not paginate the reproduced record using Arabic numbers followed by a small "a" as required by Pa.R.A.P. 2173, references to the reproduced record in this opinion shall use the proper form, "R.R. at __a."

his hands for three to five minutes. N.T. at 9; R.R. at 9a. Officer noted that Police informed Licensee that his response was deemed a refusal. N.T. at 10; R.R. at 10a.

Corporal, who was present for Officer's interactions with Licensee, corroborated Officer's testimony. He underscored the repeated opportunities offered to Licensee to consent and to read the Form. He testified that after "a very reasonable amount of time . . . we started to escort him to the door. . . . He kept saying I'll take the test after I read the [F]orm. I said you had enough time to read the [F]orm. This is your final chance. Are you going to take the test or not? . . . then two seconds after he said yes . . . after I read the [F]orm again." N.T. at 33; R.R. at 33a.

Nurse, who was questioned by Licensee, testified about the events she witnessed at the hospital when Officer requested the paperwork for a blood test. She corroborated that Licensee was belligerent when Officer asked for his consent to blood testing. She recalled the exchange between Police and Licensee lasted "approximately 30 minutes." N.T. at 58; R.R. at 58a. She described Licensee as "clearly intoxicated," yelling and spitting at her. *Id.* Nurse acknowledged that she shredded a different non-hospital form at Officer's request, but she was not familiar with that form.

Licensee testified in narrative form on his own behalf. He testified that Officer caused him to become confused and led him to believe the Form had to be signed before he could submit to testing. He claims he agreed to submit to a blood test after he finished reading the Form. Licensee testified that Officer told him he had to sign the Form before blood testing.

The day after the hearing, the Trial Court issued an order dismissing Licensee's appeal and upholding the suspension, citing our decision in *McKenna v. Department of Transportation, Bureau of Driver Licensing*, 72 A.3d 294 (Pa. Cmwlth. 2013) (regarding unequivocal consent to testing). Licensee timely appealed.

4

The Trial Court directed Licensee to submit a statement of errors complained of on appeal under Pa.R.A.P. 1925(b). Subsequently, pursuant to Pa.R.A.P. 1925(a), the Trial Court issued an opinion explaining the rationale for its decision and addressing Licensee's assignments of error. Primarily, the Trial Court reasoned that the circumstances evinced Licensee's refusal by conduct when he did not submit to testing within a reasonable time of Officer's request. The Trial Court found that Licensee did not offer any evidence tending to show that his refusal was not knowing or conscious. Trial Ct., Slip Op., 11/12/19, at 10.

## II. Discussion

On appeal,[4] Licensee asserts the Trial Court erred in not finding that Officer caused him to believe he had a right to read and sign the Form before submitting to blood testing. Based on the predicate of Officer-caused confusion, Licensee also argues that the Trial Court erred as a matter of law in disregarding case law holding that when an officer causes confusion, it is incumbent upon the officer to remedy that confusion. He claims his refusal was not knowing under the mistaken assumption created by Officer. In the alternative, Licensee seeks a remand for a hearing so he may submit evidence to show Officer caused confusion about reading and signing the Form.

### A. Legal Standard

To sustain a suspension of a licensee's operating privilege under the Implied Consent Law, PennDOT must establish the licensee: (1) was arrested for DUI by an officer with reasonable grounds to believe the licensee was operating a vehicle while under the influence of alcohol or a controlled substance; (2) was

---

[4] Our review of a trial court's order in a license suspension matter involving a refusal to submit to chemical testing is limited to considering whether the trial court's findings are supported by substantial evidence and whether the court erred as a matter of law or abused its discretion. *Reed v. Dep't of Transp., Bureau of Driver Licensing*, 25 A.3d 1308, 1310 (Pa. Cmwlth. 2011).

5

requested to submit to chemical testing; (3) refused to submit to testing; and (4) was warned by the officer that a refusal would result in suspension of his driver's license. *See Jackson v. Dep't of Transp., Bureau of Driver Licensing*, 191 A.3d 931, 932 (Pa. Cmwlth. 2018).

Once PennDOT meets its burden, the burden shifts to the licensee to prove that his refusal was not knowing or conscious, or that he was physically incapable of performing the test. *Dep't of Transp., Bureau of Driver Licensing v. Ingram*, 648 A.2d 285 (Pa. 1994); *see Sitoski v. Dep't of Transp., Bureau of Driver Licensing*, 11 A.3d 12 (Pa. Cmwlth. 2010); *Harris v. Dep't of Transp., Bureau of Driver Licensing*, 969 A.2d 30 (Pa. Cmwlth. 2009) (*en banc*). Here, the controversy concerns whether Licensee refused to submit to chemical testing.

"The question of whether a licensee refuses to submit to a chemical test is a legal one, based on the facts found by the trial court." *Nardone v. Dep't of Transp., Bureau of Driver Licensing*, 130 A.3d 738, 748 (Pa. 2015). The question of whether a licensee refuses to consent to a chemical test turns on whether the licensee's "overall conduct demonstrates an unwillingness to assent to an officer's request for chemical testing." *Id.* at 749. This Court consistently holds that a refusal to submit to a chemical test "is anything substantially less than an unqualified, unequivocal assent." *Lanthier v. Dep't of Transp., Bureau of Driver Licensing*, 22 A.3d 346, 348 (Pa. Cmwlth. 2011) (quoting *Dep't of Transp., Bureau of Traffic Safety v. Mumma*, 468 A.2d 891, 892 (Pa. Cmwlth. 1983)). "A licensee's refusal need not be expressed in words; a licensee's conduct may constitute a refusal to submit to testing." *Bomba v. Dep't of Transp., Bureau of Driver Licensing*, 28 A.3d 946, 949 (Pa. Cmwlth. 2011); *see also Park v. Dep't of Transp., Bureau of Driver Licensing*, 178 A.3d 274 (Pa. Cmwlth. 2018).

## B. Conduct as Refusal

We examine whether the Trial Court erred in determining that Licensee refused chemical testing based on his conduct.

In *McKenna*, this Court reaffirmed "that the established law provides that <u>anything less than</u> a licensee's <u>unqualified, unequivocal assent</u> to submit to chemical testing is a refusal." 72 A.3d at 299 (emphasis added). Significantly, a licensee's conduct may constitute a refusal to submit to testing. *Id.* Such conduct may include asking repeated questions, delaying the testing with stalling tactics, and requesting to read the implied consent form. *See, e.g.*, *McKenna*, 72 A.3d at 300-01 (repetitive questioning in the hospital deemed a refusal); *Harris* (repeatedly requesting to read DL-26 form deemed refusal); *Keenan v. Dep't of Transp., Bureau of Driver Licensing*, 657 A.2d 134 (Pa. Cmwlth. 1995) (questioning deemed a refusal).

The circumstances in this case are similar to those in *Harris* where this Court affirmed the trial court's order upholding the suspension based on a refusal of chemical testing when the licensee repeatedly requested to read the warning for himself. In *Harris*, before the officer read halfway through the sentence of the third part of the warning, the licensee interrupted and stated that he was not going to sign anything he did not read himself. The trooper then handed him the DL-26 form. After reading the form, the licensee asked if it was mandatory for him to take the blood test and the trooper advised it was not. Finally, when the trooper asked the licensee to sign the form indicating his refusal to chemical testing, he did so. *Harris*.

Relevant here, in light of the circumstances, the *en banc* Court held that the refusal was shown when the licensee repeatedly asked to read the form for himself. Specifically,

7

we h[e]ld that where an officer attempts to orally inform a licensee of his rights by reading Form DL-26, and the licensee interrupts such reading, <u>specifically by requesting to read the warnings himself, and the officer furnishes a typewritten copy of the warnings, if the licensee thereafter refuses chemical testing, that refusal shall be deemed an informed refusal</u>.

*Id.* at 32 (emphasis added).

Similarly, in this case, the Trial Court did not err in finding Licensee's repeated requests to read the Form for himself constitutes a refusal by conduct. The testimony of the witnesses, including Nurse called by Licensee to support his case, is consistent that Licensee was combative and hostile at the hospital. Over the course of 20 to 30 minutes, Licensee repeatedly asked to read the Form. During that period, he gave excuses for not being able to read the Form—even after Officer retrieved his reading glasses, Licensee did not consent. As in *Harri*s, Licensee was provided a copy of the Form to read. He had several opportunities to consent to the testing, and each time, Licensee conditioned his consent upon his ability to read the Form for himself. This constitutes a refusal by conduct. *Id.*

The Trial Court's finding that Licensee's conduct constituted a refusal of chemical testing is amply supported by the record. Therefore, the Trial Court did not err in deeming Licensee's conduct a refusal to chemical testing. *See id.*

### C. Knowing and Conscious Refusal

The evidence here substantiates that Licensee refused chemical testing by his conduct. Thus, PennDOT met its *prima facie* burden. The burden then shifted to Licensee to establish that his refusal was not knowing or conscious based on the circumstances. *See Ingram*; *Harris*. The Trial Court concluded that Licensee did not meet his burden. We agree.

8

"[T]he purpose behind [the Implied Consent] provision is to make a licensee aware 'of the consequences of a refusal to take the test so that he can make a knowing and conscious choice.'" *Garlick v. Dep't of Transp., Bureau of Driver Licensing*, 176 A.3d 1030, 1036 (Pa. Cmwlth. 2018) (*en banc*) (quoting *Dep't of Transp., Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873, 877 (Pa. 1989)). The language in the implied consent form itself is legally sufficient to apprise a licensee of the consequences of a refusal of testing. *Park*. Indeed, once Officer read the Form verbatim to Licensee, and provided a "meaningful opportunity to comply with the Implied Consent Law," he discharged his legal duty. *Park*, 178 A.3d at 282.

The Trial Court discerned no merit in Licensee's assertions that his refusal was not knowing or conscious. Specifically, the Trial Court found that Licensee submitted no evidence suggesting his refusal was not knowing or establishing that Officer caused any confusion. Trial Ct., Slip Op. at 10.

This Court is unpersuaded by Licensee's claims that Officer caused any confusion on Licensee's part that would necessitate clarification. Critically, there is no dispute that Officer read the Form in its entirety, verbatim, twice to Licensee. Our precedent is clear and consistent that "a reading of the DL-26 Form sufficiently apprises the driver, either hearing or reading it, that if [he] refuses to submit to the chemical test, [his] operating privilege[] will be suspended." *Park*, 178 A.3d at 281. Accordingly, "any subjective confusion Licensee may have experienced was cured as a matter of law." *Id.* at 282 (citing *Sitoski*; *Martinovic v. Dep't of Transp., Bureau of Driver Licensing*, 881 A.2d 30 (Pa. Cmwlth. 2005)).

Here, Licensee's testimony was the only evidence submitted in support of his theory that Officer caused his confusion. From its opinion, it is evident that the Trial Court credited the testimony of Police, and did not credit that of Licensee.

9

*See* Trial Ct. Op. at 4-7. The Trial Court quoted from Corporal's testimony at length, noting that Licensee was given multiple chances to take the test, and that Corporal advised Licensee he had a final chance to do so, but Licensee still refused. *Id.* at 5-6. Essentially, Licensee challenges the Trial Court's implicit credibility determinations that did not credit his claims of confusion.[5] It is well-established that this Court will not question such credibility determinations. *Park*, 178 A.3d at 284 ("Determinations as to the credibility of witnesses and the weight assigned to the evidence are matters solely within the province of the trial court as fact-finder.").

Also, contrary to Licensee's contentions, "[o]fficers do not have an obligation to make sure that licensees understand the warnings or the consequences of refus[al]." *Martinovic*, 881 A.2d at 35; *see also Bartolucci v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 74 C.D. 2017, filed Dec. 21, 2017), slip op. at 6, 2017 WL 6522484, at *2 (unreported).[6] Indeed, once Officer read the Form verbatim to Licensee, and provided a "meaningful opportunity to comply with the Implied Consent Law," "the officer has done all that is legally required to ensure the motorist is fully advised of the consequences of [his] failure to submit to chemical testing." *Park*, 178 A.3d at 281 (citations omitted).

Additionally, this Court discerns no grounds for a remand to the Trial Court for further development of the record regarding reasons for Licensee's alleged confusion. To the extent Licensee complains that the "record is not clear about whether [Police] caused the confusion that led to [Licensee] believing that he had

---

[5] Licensee's claims of confusion premised on Officer initially reading the breath test form lack merit. Officer read only the "first sentence" on that form when he realized his error. R.R. at 6a. The record is clear that Officer read the proper form related to blood testing word for word, *see* R.R. at 7a, 8a, 32a, and Licensee did not deny that fact.

[6] This case is cited for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

the right to read the [Form] and that he was required to sign the [F]orm before he could submit to chemical testing[,]" Licensee's Br. at 15, the fault for the inadequate proof lies with Licensee, rendering a remand inappropriate. *See Armstrong v. Dep't of Transp., Bureau of Driver Licensing*, 695 A.2d 930, 933 (Pa. Cmwlth. 1997).

### III. Conclusion

Because substantial evidence supports the Trial Court's finding that Licensee's conduct constituted a refusal to submit to a blood test, and there is no evidence of Licensee's confusion, the Trial Court's order upholding the suspension of Licensee's operating privilege is affirmed.

_____
J. ANDREW CROMPTON, Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David J. Celento,               :
                 Appellant      :
                         :
            v.           :    No. 55 C.D. 2020
                         :
Commonwealth of Pennsylvania,  :
Department of Transportation,    :
Bureau of Driver Licensing      :

## **O R D E R**

**AND NOW**, this 16th day of February 2021, the order of the Huntingdon County Court of Common Pleas is AFFIRMED.

_____
J. ANDREW CROMPTON, Judge